# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANDREW DEMMA, FELIX RAMOS, and RUBEN GUTIERREZ, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 14 C 08911<br>)<br>) Judge John J. Tharp, Jr. |
| CHICAGO 24 HOUR TOWING, INC. and OREN CHEN, | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

In this putative collective action under the Fair Labor Standards Act and the Illinois Minimum Wage Law, a group of tow-truck drivers contends that they were not paid overtime wages as required by law. The defendants, Chicago 24 Hour Towing Inc. ("Towing") and its owner, Oren Chen, move for summary judgment on their affirmative defense that Towing's drivers are exempt from the FLSA under its motor carrier exemption and, by extension, are not covered by the IMWL because they are subject to regulation under the federal Motor Carrier Act. For the reasons that follow, the motion is granted.

## FACTS

The plaintiffs are all tow truck drivers who are or were employed by Towing, which is registered with the United States Department of Transportation's Federal Motor Carrier Safety Administration to operate in interstate commerce as of December 2, 2014 (after this lawsuit was filed).[1] The plaintiffs' job duties and responsibilities as tow truck drivers required that they

---

[1] Although an employer subject to the jurisdiction of the Secretary of Transportation is required to register, the failure to do so does not doom the employer's ability to assert the motor-carrier exemption. *See Collins v. Heritage Wine Cellars*, 589 F.3d 895, 901 (7th Cir.

respond to dispatched calls to provide tows of disabled vehicles and to assist customers with changing tires, lockouts, jump starts, and to render other roadside assistance.

Each of the plaintiffs admits that he performed towing services outside of Illinois on behalf of Towing between November 2011 and November 2014, the relevant time period for this lawsuit. Towing's records, as authenticated by the affidavit of its president, defendant Oren Chen, show 12 interstate tows for plaintiff Andrew Demma, who personally recalls only approximately five such tows. Plaintiff Felix Ramos recalls approximately three or four out-of-state tows, while Towing's records show that he performed six. As to plaintiff Ruben Gutierrez, Towing's records show that he performed 11 out-of-state tows; he recalls doing approximately five. Plaintiff Ernesto Duarte remembers going on three or four out-of-state runs, while Towing's records show eight. Other tow truck drivers employed by Towing performed tows out of state during the same time period, and the company's invoices show that Towing's drivers provided services out of state in nearly every month of the relevant time period. There was never a gap of four months in which an out-of-state tow job was not performed by one of Towing's drivers. Chen attested: "Any tow truck driver, including all four named Plaintiffs, could have been sent out at any time to perform a tow where they went from Illinois to a surrounding state to perform a job. These jobs are assigned at random." Chen Affidavit ¶ 3, ECF No. 30-2.

The plaintiffs worked the majority of their hours operating a wheel-lift style tow truck rather than the flat-bed style that make up the majority of Towing's fleet—four of five trucks. Each of the plaintiffs attests that he never performed towing services outside the state when assigned to the wheel-lift style truck, and each of them except Gutierrez further attests that "to

---

2009).(affirming summary judgment for employer based on motor carrier exemption despite employer's failure to register, because the relevant question was solely whether the Secretary had the power to set qualifications and maximum hours for the employees).

[his] knowledge," Towing never assigned the wheel-lift tow truck to perform out-of-state towing services. Demma Affidavit ¶ 11, ECF No. 32-1; Ramos Affidavit ¶ 11, ECF No. 32-2; Gutierrez Affidavit ¶ 11, ECF No. 32-3; Duarte Affidavit ¶ 11, ECF No. 32-4. Each plaintiff attested to providing out-of-state services only while driving "a long, flat-bed style tow truck." (For this reason, the plaintiffs disagree with Chen's characterization of calls being assigned "at random"). Defendant Chen attests that there is no policy preventing the wheel-lift truck from going on out-of-state calls, and that Towing's wheel-lift truck, "Little Red 18" "was, in fact, used to provide service in the State of Indiana" as shown by the GPS report submitted by the plaintiffs (indicating 33.44 miles driven in Indiana in a 6-month period in 2014, compared to more than 13,000 miles in Illinois). Chen Reply Affidavit ¶ 13, ECF No. 35-1.[2]

## DISCUSSION

Summary judgment is appropriate when the pleadings and evidence in the record indicate the absence of any genuine issues of material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012). In deciding Towing's motion for summary judgment, the Court construes all facts and inferences in favor of the nonmoving party. *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015). If the moving party has demonstrated the absence of a disputed material fact, then the burden shifts to the nonmoving party to "provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

---

[2] The Court notes that, other than this statement interpreting the GPS exhibit report submitted as plaintiff's Exhibit E (Statewide Mileage Report, ECF No. 32-5), it has disregarded the reply affidavit of Mr. Chen. Paragraphs 4-11 are all statements by Chen that he "disagrees" with various statements of the plaintiffs about when, where, and how they worked; these disagreements, however, are nearly all unsupported by any objective evidence and therefore are just evidence of a fact dispute, not the lack of one. Even so, however, the undisputed evidence in the record suffices to meet the defendants' burden of proof.

3

The FLSA generally requires that employers compensate any employee who works in excess of 40 hours per week at a rate of 1.5 times the normal hourly wage for those additional hours. 29 U.S.C. § 207(a); *Almy v. Kickert Sch. Bus Lines*, 722 F.3d 1069, 1071 (7th Cir. 2013). Among the employees exempt from the FLSA's overtime provisions are those "with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service," including interstate drivers who work for motor carriers. 29 U.S.C. § 213(b)(1); *Almy*, 722 F.3d at 1070. This is because the Motor Carrier Act, 49 U.S.C. § 31502(b)(1), vests the authority to set maximum hours for employees of motor carriers in the Secretary of Transportation, and "a motor carrier employee cannot be subject to the jurisdiction of both the Secretary of Labor and the Secretary of Transportation simultaneously." *Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 661 (7th Cir. 2011); *see Almy*, 722 F.3d at 1071. A provision of the Illinois Minimum Wage Law also exempts workers covered by the Motor Carrier Act. *See* 820 ILCS 105/3(d)(7); *Almy*, 722 F.3d at 1071.

Here, the defendants argue that Towing's drivers are not subject to the overtime-pay provisions of the FLSA and the IMWL under the motor carrier exemption. The burden is on Towing as the employer to establish that an employee is covered by a FLSA exemption. *Blanchar v. Standard Ins. Co.*, 736 F.3d 753, 756 (7th Cir. 2013) (citing *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97 (1974)). The FLSA exemptions are narrowly drawn against employers and are limited to those establishments plainly and unmistakably within their terms and spirit. *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 571 (7th Cir. 2012).

The defendants say that the evidentiary record amply establishes the applicability of the motor carrier exemption because Towing regularly sends drivers across states lines, and the plaintiffs always were subject to being dispatched on interstate calls and in fact performed

4

interstate tows on multiple occasions. The defendants primarily rely upon *Johnson*, in which the Seventh Circuit explored the applicability of the motor-carrier exemption to tow-truck drivers. For their part, the plaintiffs do not dispute that Towing sends its drivers on runs over the Illinois-Indiana border, and that each of them occasionally made such runs. The plaintiffs' chief argument is that the defendants have not met their burden to establish that the exemption applies to them because their forays across state lines were too infrequent or sporadic—at most a total of 38 interstate tows in three years, out of what they estimate to be upwards of 20,000 dispatches.[3] In other words, the plaintiffs contend that the defendants have failed to prove that the plaintiffs' interstate operations were more than *de minimis*.[4] The defendants retort that there no is *de minimis* rule that prevents application of the motor carrier exemption to these drivers and that adopting such a rule would conflict with circuit precedent.

In *Johnson*, the Seventh Circuit reversed a summary-judgment grant for the defendant tow truck business based on factual disputes about how often the business operated out-of-state and whether the plaintiff drivers were subject to being sent on interstate runs. *Johnson*, 651 F.3d at 662-63. In the process, the Court provided a framework for applying the motor-carrier exemption. It began by reaffirming the principle of *Morris v. McComb*, 332 U.S. 422 (1947), that even "minor involvement" in interstate commerce as a regular part of an employee's duties subjects that employee to the Secretary of Transportation's jurisdiction. *Johnson*, 651 F.3d at

---

[3] The FLSA exemption for motor carrier employees is waived as to employees who, in whole or in part, drive vehicles weighing less than 10,000 pounds. The plaintiffs do not dispute that the vehicles they drove exceeded this weight.

[4] Based on the definition of "motor carrier" in 49 U.S.C. § 13102(14), which in turn depends on whether "transportation" of passengers or property is being provided for compensation, *see id*. § 13102(23), it is not self-evident that a tow-truck operator would qualify; however, the Supreme Court has answered that question. *See Dan's City Used Cars, Inc. v. Pelkey*, 133 S. Ct. 1769, 1776 n.1 (2013) (citing *Columbus v. Ours Garage & Wrecker Service, Inc.*, 536 U.S. 424, 430 (2002)).

661. *Morris* held that the Department of Transportation's predecessor[5] had the authority under the Motor Carrier Act to establish the maximum hours of service for the drivers of a carrier whose interstate services "are distributed generally throughout the year, constitute 3% to 4% of the carrier's total carrier services, and the performance of such services is shared indiscriminately among such employees and mingled with their performance of other like services for such carrier not in interstate commerce." *Morris,* 332 U.S. at 423. The Seventh Circuit has described *Morris* as "sensible decision" that "the employer of a driver who may sometimes be required to deliver goods in interstate commerce is subject to the Motor Carrier Act even if most of his driving is intrastate." *Collins v. Heritage Wine Cellars*, 589 F.3d 895, 901 (7th Cir. 2009).

In *Johnson* the Seventh Circuit next noted that the DOT's jurisdiction over an employee based on his "minor involvement" in interstate commerce does not continue indefinitely. 651 F.3d at 661. The Court appeared to endorse the four-month rule set forth in a notice of interpretation promulgated by the DOT in 1981 at 46 Fed. Red. 37,902. *Id*. at 661-62. The Court quoted the DOT's statements that "the carrier must be shown to have engaged in interstate commerce within a reasonable period of time prior to the time at which jurisdiction is in question" and that [t]he carrier's involvement in interstate commerce must be established by some concrete evidence such as an actual trip in interstate commerce." *Id*. at 661. Under the four-month rule, drivers are considered subject to DOT jurisdiction for four months from the date of proof of the carrier's interstate activity. *Id*. This prevents drivers from being subject to

---

[5] Because *Morris* preceded the establishment of the Department of Transportation, the decision addressed the jurisdiction of its predecessor—the Interstate Commerce Commission. The power to regulate safety under the Motor Carrier Act was transferred to the DOT upon its creation in 1966. *See Almy*, 722 F.3d at 1073.

DOT jurisdiction for an unlimited time if interstate activity is sporadic, but avoids a "too-strict, week-by-week approach." *Id*. at 661-62.

The defendants contend that applying the *Johnson* framework to the factual record here requires a judgment in their favor. Def. Mem. 5-6, Reply Mem. 3, ECF No. 34. This court agrees. The evidence here, in contrast to that in *Johnson*, is sufficient to establish the applicability of the motor carrier exemption as a matter of law. First, Towing engaged in interstate commerce within a reasonable period of time prior to the time during which it claims the exemption for the plaintiffs. *See Johnson*, 651 F.3d at 662. It is undisputed that Towing sent drivers out-of-state in almost every month during the relevant time period and never went four months without doing so. The specificity here as to the frequency of Towing's interstate activities contrasts with the defendant's "vague" statement in *Johnson* that it "routinely" provided interstate services. *See* 651 F.3d at 663.

Second, there is no material dispute that all of Towing's drivers were subject to being sent on out-of-state runs and these plaintiffs actually performed multiple interstate runs. *See id*. In *Johnson*, the defendant's evidence—a single affidavit without supporting records—was insufficiently specific as to "when or if" the plaintiff driver was actually assigned to out-of-state runs, or "[defendant's] practices" in that regard. Here, however, there is undisputed evidence that these plaintiffs were in fact sent on out-of-state runs, and further, that Towing assigned jobs "at random," subjecting all of its drivers to the reasonable possibility of an out-of-state run at any given time. The plaintiffs' contention that the flat-bed style trucks were more likely to go out-of-state than the wheel-lift truck they typically operated simply supports the defendants' contention that Towing regularly engaged in out-of-state work.

Given the Seventh Circuit's continued endorsement of the *Morris* decision, and its statement that even "minor involvement in interstate commerce as a regular part of an employee's duties" suffices to trigger the regulatory authority of the DOT, the defendants here have met their burden of establishing that the motor-carrier exemption applies to its drivers, who are subject to randomly being dispatched out-of-state. Although the plaintiffs' interstate trips were infrequent, they were a regular part of their job duties and something within the reasonable expectation of any of Towing's drivers.

The plaintiffs do not respond to the defendants' invocation of the four-month rule or the *Johnson* framework in general. Instead, they argue that the percentage of their service calls and their mileage that involved out-of-state driving is so small as to render the motor carrier exemption inapplicable to them. Pl. Mem. 2-4, ECF No. 33. However, the plaintiffs fail to establish that there is any *de minimis* rule that excuses individual drivers from being subject to the jurisdiction of the DOT even though employed by an interstate motor carrier. Even authorities the plaintiff relies upon to establish such a rule doubt its existence. *See, e.g.*, *Williams v. Tri-State Biodiesel, L.L.C.*, No. 13 CIV. 5041 GWG, 2015 WL 305362, at *13 (S.D.N.Y. Jan. 23, 2015) ("[W]e do not see a warrant for concluding that the applicability of the motor carrier exemption may turn exclusively on an evaluation of whether the plaintiffs' interstate activities crosses the *de minimis* threshold. Instead, we believe it more appropriate to look at the tests articulated in the regulations and in *Morris* to determine if the 'character' of the activities of each plaintiff justifies application of the exemption, including most importantly whether interstate work was assigned 'indiscriminately'").

Moreover, in arguing that their connection to interstate commerce is *de minimis*, the plaintiffs focus exclusively on their own interstate runs. But examination must be made not only

of the individual employees' activities but those of the employer. "The exemption of an employee from the hours provisions of the Fair Labor Standards Act under section 13(b)(1) depends *both* on the class to which his employer belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a)(emphasis added). That is, the employer must be a carrier "whose transportation passengers of property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction," and the employee must "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate . . . commerce." *Id*. The plaintiffs do not dispute that the employer, Towing, is a motor carrier subject to DOT regulation. And they cannot dispute that, as drivers, they engage in activities that affect motor vehicle safety in interstate commerce. Drivers are a category that expressly meet this criterion, *see* 29 C.F.R. 782.3. This is true no matter how frequently or infrequently the driver actually crosses state lines; they are covered or not covered as a class or category of employees (drivers) of a motor carrier, based on the "character" of their work, unless it "*never* involves transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.3 (emphasis added); *see Morris,* 332 U.S. at 434 (holding that the drivers and mechanics at issue were subject to regulation "as a class" or as part of an "entire classification" of employees).

Therefore even crediting plaintiff's testimony that Towing's single wheel-lift truck did not go out of state and that was what they usually drove, there no material dispute that Towing conducted interstate runs as a regular part of its business, that all of its drivers were subject to being sent on those runs, and that these plaintiffs in fact engaged in multiple interstate trips during the relevant time period. The infrequency of these particular plaintiffs' out-of-state runs does not outweigh this evidence because no *de minimis* rule has been adopted in this circuit, and

such a rule would not be consistent with circuit precedent, which relies on the Supreme Court's *Morris* decision as well as DOT's interpretation of its authority to regulate certain drivers (*i.e.*, the four-month rule). The plaintiffs also cite a regulation established by the Department of Labor (which they wrongly identify as being a Department of Transportation regulation, *see* Pl. Mem. 6, ECF No. 33), which they say calls for a workweek-by-workweek approach to the motor-carrier exemption and would entitle them for overtime for any week in which they exclusively drove the wheel-lift truck. 29 C.F.R. § 782.2(3). But the Seventh Circuit has said that the Department of Transportation is the relevant agency for purposes of interpreting the motor-carrier exemption. *See Johnnson*, 651 F.3d at 661 n.1. Moreover, the plaintiffs have not sufficiently explained how the single sentence they quote of a much longer regulation requires a piecemeal approach to the motor carrier exemption that is inconsistent with the Seventh Circuit's endorsement of the Department of Transportation's four-month guideline in *Johnson*.

\*   \*   \*

Because the defendants have established that Towing is a motor carrier that regularly engages in interstate commerce, its drivers are exempt from the FLSA overtime-pay provisions as a matter of law. For the same reason, Towing cannot be liable under the IMWL. Therefore, the defendants' motion for summary judgment is granted as to both claims.

Date: April 26, 2016

John J. Tharp, Jr.
United States District Judge